The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Stegman presiding. Thank you, Mr. Bailiff. This is our case number 4-23-1002, people of the State of Illinois v. Michelle L. Sung. I ask the counsel to identify themselves. Counsel for the appellant, please state your name, sir. Joshua Scanlon. Thank you. And counsel for the appellee? Nicholas Atwood. Thank you. Mr. Scanlon, on behalf of the defendant, you may begin your oral argument. Thank you, Your Honor. May it please the court, counsel. My name is Joshua Scanlon with the Office of the State Appellate Defender, and I'm here today representing Ms. Sung in her appeal and requesting that this court reverse her conviction and remand for new trial due to the improper admission of other crimes evidence or in the alternative to vacate her sentence and remand for new sentencing hearing due to the improper consideration of possible harm that was inherent in the offense. The primary issue in this case was the court's admission of other crimes evidence in the form of Facebook messages purported to be between Ms. Sung and primarily Stephen Nunali. Other crimes evidence is objectionable and inadmissible, and it is so because it suggests a propensity to commit crimes which risks over-persuading jurors to convict based on the defendant's past actions. This over-persuasion, due to the reliance on propensity, is what makes other crimes evidence unduly prejudicial and why such evidence is not admissible to prove propensity at all. While it is admissible for purposes, it is only so admissible if the probative value outweighs the otherwise unduly prejudicial nature of that evidence. It is admissible for proper purpose, including to prove intent. It must be material to the issue in the case, and most relevantly here... Counsel, excuse me for interrupting, but I don't think that's the standard that you just said. Isn't weighing the admissibility of relevant evidence, isn't the court supposed to decide whether the prejudicial effect substantially outweighs the probative value? Certainly, Your Honor. That's not the criterion you just quoted us. Forgive me, Your Honor, if I missed the word substantially. Okay, go ahead. It must substantially outweigh the probative value of the otherwise unduly prejudicial nature of that evidence. To that extent, it must, and most relevantly to this case, it must be relevant to establishing that probative purpose without relying on the propensity inference. This is the core of the error in this case. The value of the Facebook messages involving Nunnally and Mike relied entirely on the improper inference of propensity. The messages with Nunnally in particular were eight to nine months before the offense in this case and did not involve the same drugs that were at issue when Ms. Son was pulled over. There was no discussion... Thank you, because according to my notes, there was a Facebook message that was sent in at two days before the defendant's arrest. Yes, Your Honor, and those are the messages with Jay Deagle. Those we are not contesting as being inadmissible because they do apparently refer...potentially or arguably refer to things that were directly involved in the offense. But the messages between Nunnally and the messages between Mike involved no discussion of future plans or any indications of any continuing intent that would be relevant to show that Ms. Son specifically intended to deliver the drugs that were found in her possession. They did not make it any more or less probable that Son intended to sell those drugs rather than to use them, except by making an inference based on the implication that she had sold them previously. Unlike cases that involve some kind of affirmative act, such as the murder in Ilgin to which the state cited, where prior acts can show an absence of mistake or some continuing motivation to harm a particular victim, as was the case in Ilgin, here there was no affirmative act for which those provided that kind of independent chain of reasoning. This would be a different case under different facts. For example, were this case to involve Son handing her purse over to someone and then the purse later being found to contain methamphetamine and she claimed that she didn't have knowledge of the methamphetamine that was in her purse, that prior instances of her handing over her purse or otherwise... I'm sorry, your honor? Go ahead. Sorry, I apologize. Thought I heard something. Handing in a case such as that, though there would be an independent chain of reasoning on which this other crime's evidence would support potentially intent other than by proving propensity. Let me ask this question. There's no question but that your client possessed the drugs in question, is there? Certainly, your honor. She was in possession of them. She admitted to being... So then the question is, for a charge like this, possession with intent to deliver, the court has to present evidence of her intent to deliver. And when a defendant, as is typically the case, doesn't testify, you know, I have these drugs with the intent to deliver them to somebody else, they have to do it by circumstantial evidence. Why was this evidence that you are contesting not probative on the question of what did she intend to do with the drugs she possessed? It is not that it didn't provide any probative value. It's that the probative value of it, the way in which it would prove intent, is only through the inference of propensity. And that is why it's improper... Stopping right there, if that were true, then no evidence of her prior dealing with drugs, what she did with them could ever be admissible because your argument is always would show propensity and therefore it would be improper. Is that what you're arguing? No, your honor. The problem is not that it shows propensity because all other crimes evidence carries an inference of propensity. It is that the probative value of this to intent only relies on that propensity rather than on an independent chain of reasoning, such as, again, the state citation to the murder and ilgin. The independent chain of reasoning there is that there was a continuous victim that the defendant had a motive over time, had a continuing motive to harm over time. And it also showed a lack of mistake because it, again, involved the same victim over time. That is an independent chain of reasoning to prove intent from the chain of reasoning reliant on propensity. Here, there is no such independent chain of reasoning. And without that- This matter was argued to the trial court along the same lines that you're now arguing to us, was it not? Yes, your honor. And the trial court made a determination that it was admissible and it was primitive regarding the defendant's intent. Is that correct? Yes, your honor. Uh, our standard review regarding that ruling is that it has to be essentially an abuse of discretion. Is that correct? That is correct, your honor. So we'd have to conclude based on this record that no reasonable person could have concluded, as did the trial judge, that this was probative evidence and that the probative, the prejudicial effect uh, was not substantially outweighed by its probative value. Is that right? I'm sorry, could you just rephrase the last part of that question, your honor? Well, I'm, you know, that's the normal standard that the trial court determined it was probative, it was going to be admissible, and we'd have to decide on review that that was unreasonable determination by the trial court. Yes, your honor. Sorry. That's a pretty high burden, counsel. Why, on this record, should we make that conclusion? First, your honor, because the trial court did not account for the basis of this or it discounted counsel's point, counsel's argument pointing out that the only basis for this was to prove propensity, that where it only relies on the propensity and that's the only chain of reasoning on which it can be probative of intent, that that is not permissible, that it discounted that explanation was unreasonable, and further, to the extent that the court relied on specifically the similarity in the other crimes evidence between the kind of drug or the amount of drug, those reliances were also unreasonable because the other crimes evidence didn't actually in any way state that it involved the specific drug that it involved, and it only in one instance had a similar amount or, yeah, only in one instance had a similar amount related to the amount that Ms. Sun was ultimately in possession of. So the things that the court relied on... I apologize, your honor. Go ahead. These are the statements to Nunley, correct? Yes. Okay. The state's purpose is to show intent, intent to sell, right? Yes, your honor. What's not relevant about conversations regarding sells and how to avoid getting caught by the police and are controlled by? Again, your honor, it's not... relevant to intent. Again, your honor, it wouldn't be irrelevant. Had these been conversations that were with Nunley or with really anyone about the specific drugs that she was in possession of? Why does the specific drugs matter? Because... What authority do you have that says that the only other crimes evidence you can with regard to drug transactions is if they're discussing only that same drug or that same quantity of drug? No, your honor. Well, forgive me. Let me try to parse that out. There's whether or not it's other crimes evidence and whether or not it's direct evidence. If it were direct evidence of those specific drugs, then of course it would come in because it would be chain of reasoning beyond propensity. And the problem with what you're describing in terms of previous conversations of selling previous drugs is that the inference of intent for the instant case only relies on the propensity based on the fact that she'd done it before, which is... So there's a temporal limitation that if you talk about selling drugs as an ongoing enterprise, unless it's contemporaneous with the sale that's in question, then it's no longer relevant. Well, then it's other crimes evidence and it needs to contain either in its content or its specifics an independent basis beyond just propensity to be admissible as evidence of intent. But I'm getting the impression that your argument basically is that anything that talks about the commission of the crime is going to be for propensity and therefore is not admissible. And I go back to Justice Steigman's question. It seems like the brush that you're painting is so broad that no other crimes evidence can come in because it's always going to have something to do with propensity. I disagree, Your Honor. I think it's a very narrow brush. This is a very narrow situation and it's very fact specific. The cases of Ilgen and of Muchkovic illustrate the way in which this is supposed to operate, which is that other crimes evidence is proper purposes so long as it has an independent chain of reasoning separate from propensity to prove intent. In other words, showing absence of mistake, showing, I believe it was the state that cited to the case in Long where it involved a methamphetamine conspiracy and the evidence was that he had previously engaged in purchases of Sudafed and therefore he had knowledge of what was involved in a methamphetamine conspiracy. And so in the instant case there where he was and the experience of methamphetamine manufacture that the purchase and provided provision of Coleman fuel wasn't innocent. That's an independent chain of reasoning from he was just previously engaged in drug sales or he was just previously engaged in manufacture to support probative value of intent. This is a very narrow situation in which the probative value for purposes of intent relies entirely on that propensity inference. When that is the case, when it's the only way in which that is relevant and it thus risks over persuading the jury because it is too probative of crime based on propensity, that is when it cannot be admitted as other. So you say it's only for propensity but a little while ago we were talking about selling and you acknowledge that conversations about selling drugs could be relevant to establish intent, correct? Yes, your honor. Okay, and conversations about how to avoid being caught by the police in a controlled buy could be relevant to establishing intent for the sale of drugs, correct? Yes, your honor. Okay, so what is it that that separates those conversations from this transaction? I think, your honor, the distinction is this is that all other crimes evidence fits the definition that you just provided, which is that they are relevant to that in that they might make it more likely that the person had that intent or had that proper purpose, whatever that proper purpose might be that the other crimes evidence is being often offered for. They're all relevant but they are overly probative, they are overly relevant and therefore unduly prejudicial because they rely on that propensity inference. That is the basis of why other crimes evidence is excluded and the problem again is simply that independence, that independent chain of reasoning under which they can be admitted and probative for those purposes. Now even if this court does not find that a new trial should be ordered, this court should at least order a new sentencing hearing where the court improperly considered a factor inherent in the offense, in particular the threat of harm to the community in general at the sentencing hearing. General societal harm is implicit in most drug offenses. The court here was considering the threat of harm as an aggravating factor. It listed that threat of harm immediately after indicating it was discussing aggravation but it did not identify particular harm represented by the specific methamphetamine that was in son's possession and referred only generally to the harm to the community living in Pekin or present in in the court. When a court states that it is considering an improper factor, a viewing court cannot presume that that factor played no role in the sentence and it requires reversal for new sentencing hearing. This amounts in this case to plain error under either the first or the second prongs and or ineffective assistance of counsel should this court not review it under plain error. With regard to the second prong, consideration of an improper factor infringes the substantial right to a fair sentencing and where the court specifically identified the general threat of harm to the community as aggravating, that factor unfairly influenced the sentence in this case. Even if not every sentencing error amounts to second prong error, this court should remain the case unless it is clear from the record that the factor was so insignificant that it did not lead to a greater sentence. The court here did not dismiss the significance of this factor when it listed it in aggravation and that's comparable or excuse me in contrast to the fact that it did kind of dismiss the significance of the need for deterrence, excuse me, though it acknowledged that as an aggravating factor, it also sort of dismissed that and saying it wasn't sure that it would serve that purpose when it was acknowledging that. Even if not second prong plain error, it is plain error under the first prong or ineffective assistance of counsel and prejudicial therefore where the evidence itself sentencing was sufficiently closely balanced that consideration of the improper factor tipped the sentencing against Ms. Sun. There's evidence by the fact that here there was evidence of at least sufficient that an improper factor in aggravation could have influenced the sentence against Ms. Sun. Here the court specifically identified the harm to the community as the first factor it was listing in aggravation was not dismissive about the impact of that harm and the sentence was 11 years, five years more than the minimum of six years of the offense and it cannot be said that the improper factor could not have affected the sentence. In this situation, considering the improper factor was plain error and or amounted to ineffective assistance of counsel and this court should remand for new sentencing without that factor if it does not remand for a new trial. There are no further questions. I would simply ask the court to rule in our favor. Okay. This is Diamond. I couldn't hear what you just said. I don't know if counsel did. Thank you. Excuse me. Mr. Atwood, can you hear me, sir? Oh, yes. I hear you now. Thank you. You may now proceed with your argument. Thank you, Your Honor. Good afternoon, Your Honor's counsel. May it please the court. My name is Nicholas Atwood. I represent the people of the state of Illinois in this matter. There are two primary issues before the court and I will address them in the order raised by defendant. With regard to the first issue, the trial court did not abuse its discretion when it admitted the other crimes evidence from the Facebook messages on defendant's Facebook account because those messages were relevant to establish the purpose of the intent to sell. As Your Honor's discussed at length, there is an abuse of discretion standard of review and one comment that defendant kept coming back to was this. There was no independent chain of reasoning established. That is not the way we review these cases. The state doesn't have to show an independent chain of reasoning that establishes their purpose of intent. All we have to show that there are general similarities that exist between the current offense and the other crimes evidence. And in this case there are innumerable general similarities starting first with the fact that, you know, the drug at issue in these messages was methamphetamine. Now defense counsel argues that the messages themselves didn't refer to methamphetamine. We have to look at the context of that motion in limine hearing to understand it. The people's page 31 specifically referred to all prior incidents sought to be admitted deal with methamphetamine. End quote. Defense counsel didn't even challenge that the drug in context was methamphetamine and neither did a defendant. So while the messages themselves didn't out and out say it, which is just as De Armand noted may not even matter in the first place because it's still dealt with dealing controlled substances. The fact remains that everyone knew we were talking about methamphetamine when we talked about the specific drugs at issue. Moreover, these messages are referring to the sale and obtaining methamphetamine for sale. They involved the same group of individuals, specifically Steven Nunnally and Jay Deagle were known suppliers of methamphetamine as the officer testified to at the hearing. It dealt with similar weights and while it is true that we had an ounce but we also had a few smaller amounts specifically with regard to messages to Mike, which we asserted was the same Mike Campbell that the defendant was in her truck with him getting a ride when she was arrested. All of these factors are general similarities and they're all speaking to the fact that the defendant intended to deliver these drugs. Most notably, one of the facts underlying this if you want to argue that you need some sort of an independent chain of reasoning, all these messages occurred within nine months. Some of them occurred within just a week or a couple of days but the overarching background here is that every time this defendant needed to make money on short notice, whether it be for moving expenses or rent or paying utilities, she always went to Nunnally or Deagle to obtain a bulk purchase of methamphetamine which she could then turn a profit on selling. So even if that were the standard of review and we have to draw a factor to consider. Moreover, defense counsel has tried to distinguish some of the cases we cited regarding the nearness in time that these conversations occurred in relation to the offense itself and referring to Ilgen being a case of family abuse. The primary purpose for citing Ilgen which was a 16-year-old other crime evidence and Watkins which was a six-year-old drug conviction and Brown which was a three-year-old child death were all to just illustrate in the grand scheme of the temporal relationship, these happened almost immediately within the same range of each other. They were a blink of an eye as we said in our brief. That increases the probative value of these messages and as your honor noted, when we're looking at an abuse of discretion, we're looking at what would a reasonable trial judge come to a conclusion with and we cited the Foreman case in support of our analysis that the trial court performed. The trial court did an extensive analysis and in fact it did not even admit every piece of evidence the state wanted. It did not admit the evidence of smurfing which as I understand it was the defendant's previous obtaining of pseudofedrin for homemade meth as a precursor. One because that was nearly 12 or 13 years previously but also didn't involve the same kind of conversation which was I need to obtain methamphetamine so I can sell it and make a profit. It was unrelated and so the court exercised its discretion in a reasonable way and it excluded that evidence because it was essentially piling on and would risk being more prejudicial than probative but as your honor noted, the test here is is that evidence probative? Is it relevant and you know does it, if it's not, is it substantially outweighed by the prejudicial value and I don't think we have any substantially outweighed element present here. We have general similarities which is an admittedly low threshold that the state needed to show. In addition, we have the defendant specifically talking about missing out on steles because she was unable to obtain methamphetamine and so even if you know this court wanted to look at these and say well they're they're not relevant or they're somehow you know the prejudicial value substantially outweighs the probative value, we could argue that it was harmless error to admit these and the basis for arguing that it's harmless error, we look at what the defendant had in her possession. 22 grams of methamphetamine which is only six grams less than the ounce that she said she had obtained only what two days prior to this in the messages. She has 22 grams of methamphetamine in a single package. Our case law specifically Robinson in the Illinois Supreme Court stated that anything above 15 grams is presumptively not for personal use but for distribution. Moreover, the case law talks about the high purity level being a factor in favor of establishing a distribution. Here it was 98 percent pure. We have a digital scale which the presence of that strongly supports the inference that the defendant was distributing the methamphetamine. That scale even had residue on it from recent use. Now in opposition to that argument defendant said well I weigh out my methamphetamine before I use it personally but as the officer testified drug dealers especially those with 20 years of experience like this defendant have are aware that carrying cash, carrying multiple baggies, all of those factors create an inference of distribution which enhances sentencing. So the officer testified especially with rock substances like the rock methamphetamine in the present case they tend to carry it in a single package and break it off. Now that would make sense because we're dealing with a substance that can be easily broken off weighed and then perhaps handed to an individual as as needed put into a cellophane cigarette wrapper as the officer testified to wrapped up in a dollar bill as the officer testified to if it's not a substance it's break apart and be lost like a powder cocaine it's something you can put in a pocket and walk away with. So given those facts the jury was never required to give the defendant's statement that that's not what she used it for any credible value. Moreover we know that the defendant wasn't credible for example she claimed not to have been the author of those messages but in two of the referred said that he was just talking to a woman and the defendant agreed saying but she had more testosterone than Nunnally. In exhibit 11 Nunnally said yes ma'am to the person he was conversing with on page 58 of the exhibit record. Both of those create the obvious inference that this wasn't defendant's boyfriend who was engaged in this conversation but the defendant herself and as if the jury didn't need more evidence when the jury heard the jailhouse phone call that the she didn't want to be overheard on her own account being monitored to give her daughter instructions that she needed to go find these individuals and say that they were talking to her boyfriend Grady the daughter didn't seem to understand it and now defendant argued that that's not that that wasn't an automatic inference that that was the purpose but if you listen to the conversation and you observe the pauses and the silence in between these it's clear these are and the defendant is trying to convey a message to the daughter without outright saying I need you to tell them to lie for me. I think the jury can use their common sense when they're listening to that conversation and in giving these other facts make the conclusion that while this defendant denies these things she has an obvious interest in doing so and we don't really have to prescribe any credibility for the things that she is saying. All of that goes to the weight of her testimony. She specifically said get a hold of both of them and tell them to say they were talking to Grady that's the way I'm going to handle that all. Why would you say that if that's who they were talking to it wouldn't be necessary for them to be told that they would have already known they were talking to Grady but here we have the independent evidence referring to a female in the messages and and referring to this conversation where we can make the opposite conclusion. The defendant argued that this wasn't harmless because all of this was disputed at trial but simply disputing evidence at trial doesn't mean it's credible or carries any weight with the jury and so while it's you know while counsel did dispute the authorship of these messages and the purpose of the voicemail the jury wasn't required to believe any of that and it's apparent that they did not given the ruling in this case. Turning to the second issue one of the arguments I'd like to address in his reply brief defendant asserted that we did not properly present an argument based on second prong plain error. If you look at the the briefing on this on our brief pages 15 to 17 we specifically argued that plain error did not apply in this case on the basis that no error occurred. We cited the defendant's brief which encompassed both his first prong and second prong plain error but like all plain error questions whether it's first prong or second prong you still have to show that an error occurred. Our contention from the outset has been that no error occurred and if no error occurred second prong plain error does not apply. Now we all we also argued apparently somewhat inartfully that the evidence wasn't closely balanced and that the defendant wasn't prejudiced under the context of plain error but I just wanted to draw that to the court's attention. Another factor regarding this second issue the main thrust of the people's argument is that the trial court didn't improperly consider the harm inherent in the underlying offense but properly considered the degree of harm to the community at large and that's a relevant consideration as we cited in the Illinois Supreme Court case and people v Saldivar you can consider the degree of harm as long as it's in relation to the the issue of sentencing and it wasn't an proper you know double enhancement or an improper factor in aggravation because the legislature has set out sentencing guidelines both minimums and maximums and so when you're a trial court and you're trying to determine what sentencing applies within that range you need to justify something above the minimum sentence. Here in the context of the arguments presented by the prosecutor and in the context of the statements by the trial court it's clear that the court is referring to the degree of harm that the quote menace of methamphetamine has caused to the public at large in the Pekin area. This is an appropriate factor to consider the court specifically noted that and the state never argued that any individual was harmed as a result of this particular methamphetamine and that rendered it appropriate for the trial court to consider the degree of harm threatened by defendants distribution of methamphetamine and also not just in this case but when referring to the other factors in aggravation the defendant's history of criminality and the need of deterrence the trial court extensively discussed that this particular defendant has been involved with the methamphetamine trade in the Pekin area for the better part of two decades including its evolution from homemade methamphetamine that was based on pseudofedrin and the drug ring that she essentially managed having individuals trying to circumvent the statutory requirements of registering every time pseudofedrin was purchased in pharmacies to evolving into the rock-based trade that exists today by allowing individuals to use her vehicle to go mule three pounds of methamphetamine from out of state into the Pekin area. The court seemed to be seen to find this highly relevant to the sentencing because this defendant had proven time and time again that she is an essential cog in the distribution of methamphetamine in this area she has evolved with the times she's consistently come back to the well when she needed to make money in distributing methamphetamine to the community at large and that it was appropriate not only because of that criminal history but also in the need to deter others the trial court specifically referred to the fact that you know while it may be unsure what the effect of deterrence would be it was necessary to deter others to give a lengthy sentence and that's what justified the 11-year sentence which is counsel noted in the brief was somewhat nearer the maximum in the sentencing range and the people submit that that sentence was deserved given defendants extensive history. Now in addition to that in the reply brief counsel argued that the evidence that was presented regarding defendant's history wasn't competent evidence and it wasn't sufficiently reliable. The court specifically noted that it wouldn't consider evidence that was presented in the form of an unidentified confidential informant because the officer who would have testified to that wasn't going to be present and therefore that evidence and the inference is that evidence wouldn't be subjected across examination or some sort of a meaningful truth testing as required but what's important here is that the trial court's not bound by all the other rules of evidence at sentencing they're somewhat relaxed because we already have a conviction and at a sentencing hearing after the guilt phase all that is necessary is that the evidence be relevant and reliable and hearsay is admissible as long as it's relevant and reliable and here we had officers testifying extensively in the hearing that testimony was subject to cross-examination and opposition by defense counsel and they named names they provided evidence in the form of police reports where they got that information much of it was the officer's own investigatory resources over the past 15 years where he had repeatedly seen defendants names showing up in the context of providing drugs selling drugs that type of thing so we would submit all that evidence was properly before the court and the evidence that wasn't properly before the court it correctly excluded and with that if your honors have no further questions we would ask the court to affirm the defendant's conviction and sentence okay thank you counsel mr scaven on behalf of the appellate you may make your rebuttal argument thank you your honor i'd like to just hit uh two or three points made by counsel first of all with regard to harmlessness of the other crimes evidence uh the state argues that uh this was not harm that this was harmless uh based basically on all of the other evidence uh related to intent um but really that evidence demonstrates exactly why this other crimes evidence was harmful in this case because uh despite there being other evidence uh that could be probative of intent it was all contested during trial the value and the use of the scale the value and uh the use of um or excuse me the the amount of the drugs that were being used and how much miss sun said that she used and uh her account of what occurred on on the phone and uh her account of uh her use of uh her use of methamphetamine everything that was pointed to to prove intent was contested by miss sun in her testimony at trial and in uh contesting uh the value of the messages to deagle as well um and the other crimes evidence that we are arguing was inadmissible here gave the jury a reason to discount those explanations it gave the jury this propensity inference this inference that because she had been involved or at least purportedly involved in the sale or the distribution of drugs before they could discount any explanations that she was giving they could discount her credibility the state argues that the credibility was something that the jury could determine and yes but where that credibility was significantly impacted by this other crimes evidence it cannot be considered harmless in this case now with regard to sentencing um we did not argue that the uh evidence presented by the officer was amenable to being admitted in sentencing it was properly admitted at sentencing it was fine but the state relies so heavily upon the officer's testimony about my son's history arguing that it was to the level of reliability of the evidence in la pointe our point in uh reply brief was that no the evidence in la pointe came from direct witnesses with direct knowledge of those things and the evidence by the officer here was several levels of hearsay it's not that it's not admissible at sentencing it absolutely was but it doesn't have the same amount of reliability that the state points to and more importantly i'm sorry just a second it looks like you're talking yes i i'm sorry can you hear me now i can hear your nose okay isn't what you just said however a question for the trial judge's uh judgment and discretion to decide how much weight to accord that evidence absolutely your honor and don't we have to conclude that the judge was being unreasonable if uh by giving it the weight that uh you say he gave it i i don't believe that the trial judge necessarily did give him that much weight in fact the judge specifically noted when it was going over her history that it had to be careful how much weight it was giving to that evidence because it was some of it was through multiple levels of hearsay and because some of it was for things she had already been convicted of and already served her sentence for i i we don't contest that the problem here is specifically consideration of the harm the generalized harm to the community um and considering that as a factor in aggravation uh tipped the scale against miss in this in this case uh the state argues that methane the considering how how dangerous and how bad methamphetamine is to the community was a proper consideration but it's important to note that methamphetamine already has a higher classification as a substance than most other offenses it's built into the range in that it has its own separate act from other controlled substances to the extent that the court is considering on top of that the additional danger to the community in general is simply improper where it isn't based specifically on the circumstances of the offensive issue to the extent that the court relied on that and actually stated on the record that it considered that uh it cannot be presumed not to have taken uh had weight in the determination of the sentence and this court should remand for a new sentencing hearing if it does not remand for a new trial thank you thank you counsel the court will take this matter under advisement and in due course run their decision and we'll stand in recess